This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 25.
Plaintiff-appellant Robert Hoffman appeals from a summary judgment entered in favor of defendant-appellee Harold Levine on plaintiff's claim for a $7,500 real estate commission arising out of the lease of certain property. Plaintiff claims there were disputed material facts precluding summary judgment. We find no error and affirm.
This appeal turns on the construction of an Agreement dated August 17, 1994, between plaintiff and defendant. Several years prior to the date the Agreement was signed, plaintiff was involved in the ownership of a building on Croton Avenue in Cleveland, wherein Max Pallet, Inc. (hereinafter "MPI") was a tenant. Plaintiff's building was to be sold to Cuyahoga County and demolished.
Plaintiff learned that defendant was about to take possession of certain foreclosure property at 4500 Crayton Road in Cleveland which would be suitable for MPI. In anticipation, plaintiff signed up MPI as a tenant on a short-form lease for the Crayton property although plaintiff did not own it or have any interest in it at the time. Plaintiff's idea was to either purchase the Crayton property from defendant and have a tenant (MPI) already signed up, or assign the MPI lease to defendant if the latter did not want to sell once ownership of Crayton became a reality. The short-form lease between plaintiff and MPI for the Crayton Road premises (not dated) provided for a five-year term from July 1, 1994 to June 30, 1999 for $3,750 per month or $45,000 per year.
Plaintiff and defendant subsequently entered into the Agreement dated August 17, 1994, which is at issue herein. It states in full:
 Harold Levine (Levine) and Robert Hoffman (Hoffman) do hereby agree:
 1. When Levine has acquired a marketable title to a property at 4500 Crayton Road, Cleveland, Ohio, under a pending foreclosure law suit, Levine may consider negotiating a buy/sell agreement of the said property to Hoffman at a price to be agreed upon.
 2. If such sale does not occur for any reason within Ninety (90) days after Levine obtains such title, then, in the further event that the Max Pallet Co. has signed a five (5) year lease agreement with Levine, Levine will pay Hoffman the sum of Seven Thousand Five Hundred Dollars (7,500.00) in five (5) equal monthly payments beginning on the first day of the next month after the Ninety (90) days has passed.
 3. Prior to any of the events referred to above, Hoffman has no objection to the Max Pallet Co. renting space in the Crayton Property (now under the control of a receiver) on a month to month basis.
 4. There are no other agreements of any kind, oral or written between Levine and Hoffman. It is intended that this agreement will be binding upon the parties, their heirs and assigns.
 WHEREFORE, the parties have signed this agreement this 17th day of August, 1994 at Beachwood, Ohio.
 /S/________ ________ HAROLD LEVINE
 /S/________ ________ ROBERT HOFFMAN
On July 10, 1996, defendant, through a family-owned corporation (Byrite Real Estate Ltd.), purchased the Crayton property at a sheriff's sale for $300,000. Rather than consider negotiating a buy/sell agreement with plaintiff as mentioned in paragraph one of the Agreement, Byrite retained the property.
Plaintiff contends that defendant never informed plaintiff when Byrite acquired the Crayton property. Byrite proceeded to negotiate a different lease for a six (6) month term with MPI rather than becoming the assignee of the Hoffman/MPI five-year lease that plaintiff already had in place. Plaintiff contends that defendant's act of dealing directly with MPI behind his back was clearly intended to avoid the payment to plaintiff of the $7,500 commission stipulated in paragraph two of the August 17, 1994 Agreement.
Finally, on February 4, 1997, Byrite sold the Crayton property to Pyramid Management, Inc. for $500,000, which amount was allegedly enhanced because defendant had a tenant (MPI) in place for the new owner.
Following motion and briefing, the trial court entered summary judgment for defendant without opinion or explanation. This timely appeal ensued.
Plaintiff's sole assignment of error states:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
Under Civ.R. 56(C), summary judgment is proper when:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.
State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509,511, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327. It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. Celotex Corp. v. Catrett
(1987), 477 U.S. 317, 330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,358-59.
However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. (1991), 59 Ohio St.3d 108,111; Celotex, supra, at 322-323. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." Chaney v. ClarkCty. Agricultural Soc. (1993), 90 Ohio App.3d 421, 424.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio modified the summary judgment standard as was applied under Wing. Presently, under the new standard, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or a material element of the nonmoving party's claim." Dresher, supra, at 296.
This Court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711 ("We review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ. R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion."Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50; Link v.Leadworks Corp. (1992), 79 Ohio App.3d 735, 741.
In construing the August 17th Agreement between the parties, our goal is to give effect to the intention of the parties as expressed therein. In Harry S. Peterson Co. v. Detzel Constr.
(March 13, 1998), Hamilton App. No. C-961125, unreported, the court stated the principles we must apply:
 * * * In the construction of any written agreement, a court's primary objective is to ascertain and give effect to the intent of the parties, which can be found in the language that they chose to employ. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.
(1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526. The interpretation of a written agreement is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923; Seringetti Constr. Co. v. Cincinnati (1988), 51 Ohio App.3d 1, 4-5, 553 N.E.2d 1371, 1375. It must give effect to the contract's express terms in determining the rights and obligations of the parties and cannot, in effect, create a new contract by finding an intent not expressed in the clear language used by the parties. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501; Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246, 374 N.E.2d 146, 150.
These principles are particularly applicable where the parties have included an integration clause, as here, which specifies at paragraph four that: "There are no other agreements of any kind, oral or written between Levine and Hoffman. It is intended that this agreement will be binding upon the parties, their heirs and assigns." Morris Novak RealtyCo. v. Gibbons (May 27, 1993), Cuyahoga App. No. 62654, unreported at 4, citing Nobles v. Toledo Edison Co. (1940),67 Ohio App. 414, 417.
Giving effect to these principles, we must construe the intention of the parties from the Agreement itself. It is undisputed that Levine never personally acquired marketable title to the Crayton property. His family-owned corporation (Byrite) purchased it, but no provision for that contingency was made in the Agreement. Even if Levine may be deemed the purchaser of the Crayton property, he was only obliged to "consider negotiating a buy/sell agreement * * * to Hoffman at a price to be agreed upon." He was not obligated to sell the property to Hoffman. This condition, illusory by itself, was never satisfied. Therefore, it is irrelevant to the performance or non-performance of the Agreement.
Furthermore, the relevant condition in paragraph two was also not satisfied in that MPI never signed "a five year lease agreement with Levine" triggering the payment of $7,500 to Hoffman. Although Hoffman obviously considers it unfair for Levine to indirectly reap the benefits of having Hoffman's former tenant for the Crayton property, there is no provision in the Agreement to prohibit or guard against such a development. When an agreement is made between two sophisticated businessmen bargaining at arm's length from relatively equal positions, this Court will not substitute its judgment for that of the trial court thereby creating an agreement for the parties that they did not create for themselves. See DeHoff Agency Inc. v. First Natl. Supermarkets,Inc. (July 28, 1997), Stark App. No. 96CA0392, unreported.
We find no error in the grant of summary judgment for defendant.
Plaintiff's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________________________ JAMES M. PORTER, ADMINISTRATIVE JUDGE
 _____________________________________ TERRENCE O'DONNELL, JUDGE
 _____________________________________ JOHN T. PATTON, JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App. R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).